IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN W. MILLER, | : | CIVIL ACTION NO. **3:CV-06-0725** |
| Plaintiff | : | (Judge Caputo) |
| v. | : | (Magistrate Judge Blewitt) |
| JOANNE B. BARNHART,<br>Commissioner of<br>Social Security, | : | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

This is a Social Security disability case pursuant to 42 U.S.C. § 1383(c)(3), wherein the Plaintiff, Jonathan W. Miller, is seeking review of the decision of the Commissioner of Social Security (Commissioner) that denied his claim for supplemental security income (SSI) pursuant to Title XVI of the Social Security Act (Act).  42 U.S.C. §§ 1381-1383f.

**I. PROCEDURAL HISTORY.**

The Plaintiff protectively filed an application for SSI on November 21, 2003, alleging disability since June 30, 1990, due to chronic back pain syndrome and a left knee impairment.  (R. 60).  The state agency denied his claim. (R. 30-34).  The Plaintiff filed a timely request for a hearing (R. 35) and a hearing was held before an Administrative Law Judge (ALJ) on October 12, 2005.  (R. 271-293).  At the hearing, a vocational expert and the Plaintiff, represented by counsel, testified. (R. 275, 288).  The Plaintiff was denied benefits pursuant to the ALJ's decision of November 4, 2005.  (R. 9-17).

On December 8, 2005, the Plaintiff requested review of the ALJ's decision by the Appeals Council.  (R. 8).  Said request was denied on February 2, 2006 (R. 4-7), thereby making the ALJ's decision the "final decision" of the Commissioner.  42 U.S.C. § 405(g) (1995).  The ALJ's decision is the subject of this appeal.

In compliance with the Procedural Order issued in this matter, the parties filed briefs in support of their respective positions.  (Docs.  7 and 8).

## II. STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999).  It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a

> specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

### III. ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520 (1990). *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. 20 C.F.R. §§ 404.1520, 416.920 (1995).

The first step of the process requires the Plaintiff to establish that he has not engaged in "substantial gainful activity." See 20 C.F.R. §§ 404.1520(b), 416.920(b) (1995). The second step involves an evaluation of whether the Plaintiff has a severe impairment. *See* 20 C.F.R. §§ 404.1520(c),416.920(c). The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulations No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that he is unable to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The Plaintiff bears the burden of demonstrating an inability to return to his past relevant work. *Plummer*, 186 F.3d at 428. Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy

that the Plaintiff is able to perform, consistent with his medically determinable impairments, functional limitations, age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors. *Id.*

The ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 12). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful work activity since his alleged onset date of disability. (R. 13). At step two, the ALJ concluded from the medical evidence that Plaintiff's impairments, chronic back pain syndrome and a knee impairment, were severe within the meaning of the Regulations. (R. 13). At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments severe enough to meet or equal the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4. (R. 13). The ALJ paid particular attention to Sections 1.00 (Musculoskeletal System) *et. seq.*, and 11.00 (Neurological) *et seq.* of the Listings, but found Plaintiff is not presumptively disabled pursuant to 20 C.F.R. 416.920(d). 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.00 and 11.00. (R. 13-14). In making her determination, the ALJ also considered Plaintiff's subjective complaints and limitations pursuant to Social Security Ruling 96-7p. (R. 15).

At step four, the ALJ found that Plaintiff has no past relevant work history. (R. 16). Accordingly, the ALJ moved on to step five and determined that Plaintiff retained the residual functional capacity (RFC) to perform work at the light exertional level. (R. 14). Based on the testimony of the impartial vocational expert, the ALJ determined that such work existed in the

national economy in significant numbers. (R. 16). The ALJ additionally determined that Medical-Vocational Rule 202.20 directed a finding of not disabled. (R. 17).

The relevant time period for this case is June 30, 1990, the alleged onset date of disability, through November 4, 2005, the date of the ALJ's decision.

## IV. BACKGROUND.

### A. Factual Background.

The Plaintiff, twenty-three years old at the time of his alleged disability onset, was considered to be a "younger individual" under the Regulations. (R. 17, 60). 20 C.F.R. § 404.1563. He has a high school education and attended vocational technical school. (R. 69, 275). Plaintiff alleged a disability onset date of June 30, 1990. (R. 60).

Plaintiff was in a work-related accident in 1988, causing his initial back pain. (R. 208). Several hundred-pound bags of beans fell on Plaintiff at work. (R. 208). Plaintiff had a spinal fusion operation at that time and was cleared to return to work. He was eventually laid off and was awarded SSI in 1996. (R. 104, 285). Plaintiff testified that he received SSI for a while, but it stopped because the income of his girlfriend, with whom he was living, exceeded the income level. After his girlfriend's income decreased, Plaintiff contacted the Social Security Administration. He was informed that he had to reapply for benefits, thus leading to the present Application for SSI. (R. 285).

Plaintiff takes various medications. He takes Nexium (for his stomach), Lorazepam[1]/Ativan, Methocarbon (a muscle relaxer), Hydrocodone[2]/Oxycodone[3], Darvon (for pain in the back and knees), and Claritin/Allegra-D (for allergies). (R. 68, 281-282). He testified that the pain medications no longer work as well as they used to. (R. 286.) He was also prescribed antidepressants and manic depression medicine. (R. 287). Plaintiff has no Tens Unit[4]. (R. 283). He takes hot showers with a massager and uses Ben-Gay to ease his pain. (R. 283). He underwent physical therapy and was treated by a chiropractor, but with no success. (R. 208).

Plaintiff stated that there is never any time when his back does not bother him. (R. 286). He associates the back pain with the pain in his knee, hips, side areas, and heels. (R. 284-285). He also experiences headaches often, but has never reported this to a doctor. (R. 286). Plaintiff testified that on a scale of zero to ten (ten being the most intense pain), his pain level was about an eight at the ALJ hearing in October 2005, because he did not take his medication that day. (R. 286).

Plaintiff goes to bed around 10:30 p.m. or 11:00 p.m. He wakes up a few minutes after 12:00 p.m. (noon). (R. 280-281). Plaintiff testified that he does not sleep for more than twenty to thirty minutes consecutively, and not more than two hours a night. (R. 280-281). He wakes up often and has to sleep with pillows underneath him for comfort. (R. 281). Plaintiff testified that he

---

[1] An antianxiety drug of the benzodiazepine group. Stedman's Medical Dictionary, 1032 (27th ed. 2000).

[2] A potent analgesic derivative of codeine used as an antitussive and analgesic. Often used combined with aspirin or acetaminophen. Stedman's Medical Dictionary, 840 (27th ed. 2000).

[3] A narcotic analgesic often combined with aspirin or acetaminophen. Stedman's Medical Dictionary, 1293 (27th ed. 2000).

[4] Transcutaneous Electro-Nerve Stimulator unit.

can stand for about twenty minutes and sit for about twenty minutes. (R. 281).  He can walk about one city block at a time.  (R. 281).

A vocational expert (VE), Sean Hanahue, testified at the ALJ hearing.  (R. 288-292).  The VE defined sedentary[5], light[6] and medium[7] work.  (R. 288-289).  The vocational expert testified that Plaintiff's work at Clinton Dale Mills, Inc., was classified as semi-skilled work in the light duty physical exertion level, SVP three.  (R. 289).  The VE also testified that Plaintiff's work as a crew chief supervising a staff of one was classified as semi-skilled work in the medium duty physical exertion level, SVP three.  (R. 289).  The VE testified that Plaintiff had no transferrable skills.  (R. 289).

The ALJ specifically asked the VE to hypothetically consider an individual who could lift twenty pounds occasionally, ten pounds frequently; could stand, sit, or walk for six hours in an eight- hour workday; and could occasionally climb, balance, stoop, kneel, crouch, and crawl, (however, not on ladders).  The VE testified that such work would be in the light exertional level, and that such an individual could perform work in the regional or national economy.  The VE identified the Northeast Pennsylvania labor market as Plaintiff's residence.  (R. 289).  The VE identified available jobs in this category as a tagger, with 800 jobs; a cashier II with 1,200 jobs; and a small parts assembler with 650 jobs.  (R. 290).

---

[5] The VE defined sedentary work as "employment that requires sitting for two-thirds or 66% of the workday and a lifting restriction of 10 pounds." (R. 288).

[6] The VE defined light work as "standing for two-thirds or 66% of the workday and a lifting maximum of 20 pounds." (R. 288-289).

[7] The VE defined medium work as "[m]edium exertional level exceeds both of those [sedentary and light] and is traditionally performed in a standing capacity and lifting restrictions are at 50 pounds." (R. 289).

The ALJ then asked the VE to hypothetically consider an individual who could lift twenty pounds occasionally, ten pounds frequently; could only stand and walk for two hours in an eight-hour day; could sit for six hours in an eight-hour day with a sit/stand option; could occasionally climb, balance, stoop, kneel, crouch, and crawl (however, never on ladders). The VE testified that such an individual would be able to perform work in the national or regional economy. Such jobs would include a small parts assembler with 650 jobs; a garment inspector with 800 jobs; and a packer with 500 jobs. (R. 290-291).

The ALJ then asked the VE to take that same hypothetical and add an additional restriction of "breaks in excessive of two and/ or would require unscheduled breaks to lay down." (R. 291). The VE testified that such an individual would not be able to perform any of the light or sedentary jobs the VE listed, or any employment in the national or state economy. (R. 291-292).

The Third Circuit has held, with respect to hypothetical questions posed to vocational experts, that "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). A hypothetical question posed to a vocational expert "must reflect *all* of a claimant's impairments." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (emphasis added). In *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), the Third Circuit stated that "[w]here there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial

evidence." (citations omitted).

### B. Plaintiff's medical history.

Plaintiff suffers from chronic back pain syndrome from an accident at work in 1988. Plaintiff began treating with Nicholas W. DiCuccio, M.D., in 1997. Dr. DiCuccio sent Plaintiff for MRIs of the lumbar spine, a bone scan, a CT scan of the head, an EEG, gallbladder sonogram, x-ray of the right index finger, foot and right knee, and several blood tests. (R. 158-207).

An MRI of the lumbar spine on April 6, 2000 showed "[d]egenerative arthritic changes with spondylosis[8] and osteophytosis[9]... [a] small central disc bulging at L2-3, L3-4, and L4-5... [n]o evidence of an acute herniation." (R. 199). A March 2005 CT scan of the lumbar spine showed posterior laminectomy[10] and fusion at the L5-S1 level and L4; mild narrowing of the spinal canal at L2-L3 and L3-L4 secondary to broad-based bulging disc and mild hypertrophic changes; mild bony narrowing at L4-L5; and moderate degenerative intervertebral disc change from L4 through S1. (R. 236-237). An MRI of the lumbar spine in March 2005 showed post-surgical changes of a spinal fusion for the L4-S1 levels; minor retrolisthesis of L4 and L5 and mild spondylolisthesis[11] of L5 on S1; disc space narrowing at L4-5 and L5-S1; and no evidence of instability on flexion or extension.

---

[8] Ankylosis of the vertebra; often applied non-specifically to any lesion of the spine of a degenerative nature.  http://cancerweb.ncl.ac.uk/cgi-bin/omd?query=spondylosis

[9] Outgrowth of immature bony processes from the vertebrae, reflecting the presence of degenerative disease and calcification. It includes cervical and lumbar spondylosis.
http://www.hon.ch/HONselect/Selection/C05.799.613.678.html

[10] Excision of a vertebral lamina; commonly used to denote removal of the posterior arch. Stedman's Medical Dictionary, 964 (27th ed. 2000).

[11] Forward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or upon the sacrum. Stedman's Medical Dictionary, 1678 (27th ed. 2000).

(R. 233).

The April 2000 x-ray of the left great toe revealed no evidence of fracture or osteomyelitis.[12] The doctor noted that the left great toe was normal, except for a small spur in the distal phalanx on the plantar aspect. (R. 200). The September 14, 1999 x-ray of the right index finger showed no evidence of fracture or dislocation. (R. 198). The November 29, 2000 x-ray of Plaintiff's right knee showed possible "nondisplaced fracture of the medial tibial plateau." (R. 133, 197). The CT scan of the head in June 1998 was negative. (R. 204). The gallbladder study in March 1996 was normal. (R. 202).

On December 19, 2003, Dr. DiCuccio completed a Pennsylvania Department of Public Welfare Employee Re-Assessment Form. (R. 156-157). Dr. DiCuccio found that Plaintiff was temporarily disabled from December 1, 2003 until December 1, 2004. (R. 157). From January 29, 2004, to September 6, 2005, Dr. DiCuccio saw Plaintiff for follow-up appointments. He noted a continued diagnosis of chronic lumbar pain, chronic left knee pain, chronic migraine headaches, degenerative disc disease, muscle spasms, and allergic rhinitis. (R. 238-253).

On January 3, 2005, Dr. DiCuccio completed a statement of continued disability form. (R. 225). He diagnosed Plaintiff with degenerative disc disease, intractable back pain, and failed back syndrome. (R. 225). At this time, he checked a box indicating that Plaintiff was totally disabled and had retrogressed. He stated that Plaintiff could do no heavy lifting or pushing. (R. 225). Dr. DiCuccio did not believe there would be a fundamental or marked change in the future and he did not believe Plaintiff was a candidate for a rehabilitation program.

---

[12] Inflammation of bone caused by a pyogenic organism. http://cancerweb.ncl.ac.uk/cgi-bin/omd?query=osteomyelitis

In 1999, Plaintiff treated with Rodwan K. Rojjoub, M.D. (R. 107-110). Dr. Rojjoub noted Plaintiff suffered from low back pain syndrome, degenerative lumbar disc disease at multiple levels, and status post lumbar laminectomy with fusion. (R. 108). Dr. Rojjoub did not believe Plaintiff required surgery and recommended conservative treatment with moist heat, massages, exercises and a pain management clinic. (R. 108).

Plaintiff treated with Wise Chiropractic and Rehabilitation Center, Inc. from August 2003 to November 2004. (R. 226-230). Throughout his treatment with the chiropractor, Plaintiff's symptoms generally remained the same. There were days Plaintiff reported his symptoms improved, then other days they either remained the same or worsened. At the last appointment, Plaintiff reported there was no significant improvement; the chiropractor advised Plaintiff to call for an appointment when needed. (R. 226).

Jeffrey H. Baker, M.D., P.C., conducted an independent medical exam (IME) in April 2004. He noted that after Plaintiff was operated on for spinal fusion in 1988, he was placed on disability of about one year and was declared fit to return to work. (R. 208). He worked, with pain, for only about six months before being laid off. (R. 208). Dr. Baker assessed lumbar disc disease, lumbar neuritis, and knee pain. (R. 210).

Dr. Baker completed a Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activity. (R. 211). Dr. Baker found that Plaintiff could frequently lift and carry two to three pounds, and occasionally lift and carry ten pounds; he could never lift and carry twenty to one-hundred pounds. He found that Plaintiff could stand and walk for two to four hours in an eight-hour day, alternating with sitting. He opined that Plaintiff could sit two to four hours in an eight-

hour day.  Dr. Baker found that Plaintiff had no limitations in pushing and pulling.  He found that Plaintiff could never bend, kneel, stoop, crouch, or climb.  He found that Plaintiff could frequently balance.  Dr. Baker found no limitations in other physical functions and no limitations in environmental restrictions.  (R. 211-212).

A Disability Determination Service (DDS) physician completed a Residual Functional Capacity (RFC) Assessment on May 10, 2004.  (R. 214-221).  The DDS physician's primary diagnosis was degenerative disc disease, the secondary diagnosis was lumbar neuritis, and other alleged impairments were left knee pain.  (R. 214).  The doctor found that Plaintiff could occasionally lift and/ or carry twenty pounds; frequently lift and/ or carry ten pounds; stand and/ or walk and sit (with normal breaks) for a total of about six hours in an eight-hour workday; push and/ or pull unlimitedly; could frequently climb a ramp/ stairs (but never climb a ladder/ rope/ scaffolds); he could occasionally balance, stoop, kneel, crouch and crawl.  The doctor found no manipulative limitations, no visual limitations, and no communicative limitations.  He found that Plaintiff should avoid concentrated exposure to extreme cold, wetness, vibration, and hazards.  Plaintiff could be exposed to extreme heat, humidity, noise, and fumes, odors, dusts, gases and poor ventilation unlimitedly.  The doctor lastly noted that Plaintiff can lift five pounds, climb eight to ten steps, walk up to four hundred yards, use a back brace, and occasionally use a walking stick.  The doctor found the Plaintiff only partially credible.  (R. 219).  The doctor completed the RFC Assessment with a statement from a treating or examining source regarding Plaintiff's physical capacities, and he noted that his conclusions were significantly different from the treating/ examining source's conclusions.  (R. 220).

## V. DISCUSSION

### *A. Whether the 1996 SSI decision imposes res judicata.*

The Plaintiff alleges that, since the Commissioner did not meet her burden of proving any improvement since the July 24, 1996 ALJ decision finding the Plaintiff disabled, the doctrine of *res judicata* barred the ALJ from holding the Plaintiff to be not disabled in 2006. (Doc. 7 at 5).

The time period involved in Plaintiff's prior SSI application, which was granted on July 24, 1996, is not precluded from review in this case based on the doctrine of *res judicata*. "Res judicata principles apply to administrative as well as judicial adjudications . . . *res judicata* may be properly applied to preclude a subsequent claim for disability benefits where the same claimant has filed a previous application based on the same issues and where such prior determination has become final by virtue of administrative adjudication." *Tobak v. Apfel*, 195 F.3d 183, 186 (3d Cir. 1999) (internal quotations and citations omitted).

The regulations at 20 C.F.R. §§ 404.957(c)(1) and 416.1457(c)(1) provide that administrative *res judicata* is present when all three of the following conditions are exist:

> (1) there has been a previous determination or decision under the same subpart with respect to the same party;
>
> (2) the previous determination or decision was based on the same facts and on the same issue(s);
>
> (3) the previous determination or decision has become final by either administrative or judicial action.

20 C.F.R. §§ 404.957(c)(1) and 416.1457(c)(1).

Thus, an ALJ may dismiss a request for a hearing entirely or refuse to consider any one or more of the issues because the doctrine of *res judicata* applies, in that we have made a previous determination or decision under this subpart about the claimant's rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action.  20 C.F.R. § 404.957(c)(1).

Here, there was a previous decision by an ALJ in 1996 awarding Plaintiff SSI.  (R. 104).  However, that award of SSI terminated, and Plaintiff was required to reapply for benefits.  In Plaintiff's new application, he alleged a disability onset date of June 30, 1990.  The relevant time period of this application is June 30, 1990 through November 4, 2005, the date of the ALJ's decision.  The 1996 ALJ decision could not consider any of Plaintiff's alleged disabilities from 1996 to 2005.  This current application requires consideration of that time period.  Therefore, we are not reviewing the same facts and issues as in the previous decision; we are reviewing additional facts and issues.

The record reveals that Plaintiff worked after his injury.  Plaintiff indicated that he continued to work the same job duties and he did not make any job-related changes (such as attendance, help needed, or employers) after his injury, though he stated he worked less hours.  (R. 64).  From 1998-1999, Plaintiff worked eight to twelve hours a day as a full-time carpet cleaner.  (R. 52, 64).  He stated that he stopped working because "the boss saw that my back was in pain, acting up. Couldn't do [the] job and he fired me on the spot."  (R. 64).

As Defendant points out in his brief, the Hearings, Appeals and Litigation Law Manual (HALLEX) provides that Plaintiff's *res judicata* claim must fail.  (Doc. 8 at 6).  HALLEX § I-2-4-40 (C)

states when administrative *res judicata* is not applicable: when either there has been a change in issues (e.g., specific section in listing of impairments changed) or the prior determination is not administratively final (e.g., claimant lacked mental competency to appeal prior determination or incorrect, incomplete, or misleading information was provided to the claimant).[13]

HALLEX § I-2-4-40 (K) states that an ALJ may not use *res judicata* as the basis for dismissing a current application when there has been a change in a statute, regulations, ruling or legal precedent which was applied in the previous decision.  Plaintiff alleges he has a musculoskeletal impairment under Listing 1.00.  Listing 1.00 was revised on November 19, 2001, with an effective date of February 19, 2002.  These regulations represented a change in how certain musculoskeletal impairments are evaluated.  The HALLEX explains that "[t]he musculoskeletal listings have been so extensively revised that, while they are not in general, less restrictive, the "issues" are different and include the use of functional criteria to indicate listing level severity."[14]   Therefore, a new determination should be prepared for all subsequent claims involving a musculoskeletal impairment if the prior claim was denied before February 19, 2002 (even if no new facts are presented and even if insured status expired before the date of the prior final determination or decision).  The ALJ must apply the new regulations (*i.e.*, the regulations published on November 19, 2001) and issue a decision on the merits of the case).[15]   Here, Plaintiff's prior claim was decided on July 24, 1996, before February 19, 2002. (R. 104).  Thus, consideration of whether Plaintiff was disabled prior to

---

[13] http://www.ssa.gov/OP_Home/hallex/I-02/I-2-4-40.html

[14] http://www.ssa.gov/OP_Home/hallex/I-02/I-2-4-40.html

[15] http://www.ssa.gov/OP_Home/hallex/I-02/I-2-4-40.html

the relevant time for this case, or thereafter, is not barred by the doctrine of *res judicata*.

Based on the foregoing, we find that the doctrine of *res judicata* does not apply and therefore does not bar the ALJ from holding the Plaintiff is not disabled in 2006.

***B. Whether the ALJ, in holding the Plaintiff not disabled, engaged in medical analysis which is contrary to the medical evidence.***

Plaintiff also alleges that, in finding him not disabled, the ALJ erred by engaging in medical analysis contrary to the medical evidence. (Doc. 7 at 7). We disagree, and find that the ALJ engaged in a credibility determination and did not engage in medical analysis.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir.1997); *see also Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." *Frazier v. Apfel*, 2000 WL 288246 (E.D.Pa. March 7, 2000). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Com. of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999). An ALJ may find testimony to be not credible, but he must give great weight to a claimant's subjective testimony. *Id*.

Here, the ALJ noted that she considered and evaluated Plaintiff's subjective complaints pursuant to Social Security Ruling 96-7p. (R. 15). The Plaintiff made several subjective complaints of physical pain and resulting limitations in his application and at the hearing. He stated that he experiences clicking, popping, grinding, numbness and a tingly sensation in his back, and pain in his

hip. (R. 284). The Plaintiff claimed that he does not do housework. (R. 278). He does not go shopping; his girlfriend does all the shopping. (R. 278). He only cooks if his girlfriend is at work. (R. 75). He testified that he could only stand and sit for twenty minutes if he had to "push it." (R. 281). He also testified that he could only walk about one city block at a time. (R. 281). He testified that he spends "maybe two to three hours maybe… five [hours], if that" in a car per week. (R. 276).

The record does not bear out the Plaintiff's claims. Plaintiff testified that he takes care of his own bathing, grooming, and dressing. (R. 277). He testified that he mows the lawn once every three weeks, but no longer has any other hobbies. (R. 75, 278). Plaintiff stated that, from a seated position, he is able to extend his legs out and bend them back. (R. 280). He stated that he thinks he can also extend his arms and bend them back. (R. 280). Sometimes he can reach overhead. (R. 280). He can carry two grocery bags at a time (one in each hand), depending on their weight. (R. 75). Plaintiff also stated that he does not need help walking and he can walk 300-400 yards at a time. (R. 76). He has no problems when out in public. (R. 78).

The ALJ thus found that Plaintiff's subjective complaints and limitations are "overstated." (R. 15). She noted that Plaintiff's impairment could cause the pain and limitations alleged, but not to the extent alleged by the Plaintiff. (R. 15).

The ALJ acknowledged the medical diagnoses and opinions of Plaintiff's treating/ examining physicians, as well as those of the state agency physician. (R. 14-15). The ALJ noted the MRIs, CT scans, and x-rays that Plaintiff underwent. (R. 14-15). The ALJ also noted that while signs of pain over a long period of time are "weight loss, an altered gait or limitation of motion, local morbid changes, or poor coloring or station," these signs are "not conclusory by itself," but do contribute

to the determination that the claimant is not disabled as a result of pain. (R. 16). The ALJ acknowledged that such signs do not alone signify pain. The ALJ merely considered these symptoms with the medical evidence of record when determining Plaintiff's disability. She ultimately found that Plaintiff's "complaints are inconsistent with the clinical and diagnostic findings found of record." (R. 15). We agree and therefore recommend a finding that the ALJ did not engage in medical analysis contrary to the medical evidence.

**VI. RECOMMENDATION.**

Based on the foregoing, it is respectfully recommended that the Plaintiff's appeal be DENIED.

<u>**s/ Thomas M. Blewitt**</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: January 10, 2007**

|  |  |  |
|---|---|---|
| IN THE UNITED STATES DISTRICT COURT | | |
| FOR THE MIDDLE DISTRICT OF PENNSYLVANIA | | |

JONATHAN W. MILLER,              :         CIVIL ACTION NO. 3:CV-06-725
                                 :
    Plaintiff                    :         (Judge Caputo)
                                 :
v.                               :         (Magistrate Judge Blewitt)
                                 :
JOANNE B. BARNHART,              :
Commissioner of                  :
Social Security,                 :
                                 :
    Defendant                    :

## **NOTICE**

    NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated January 10, 2007.

    Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a de novo determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

___magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

_____

                                                                 **s/ Thomas M. Blewitt**
                                                                 **THOMAS M. BLEWITT**
                                                                 **United States Magistrate Judge**

**Dated: January 10, 2007**